# THE JUDGES' SALARY CASES.

COLBERT *et al. v.* BOND and GLISSON *v.* CALLOWAY *et al.*

(*Jackson.*   April Term, 1903.)

1. **CONSTITUTIONAL LAW.** Compensation of judges and chancellors fixed by definite legislative enactments.

   The compensation of judges and chancellors in this State must, under the constitution, be ascertained and fixed by law, that is, by statute enacted by the legislature. (*Post, pp.* 379, 381, 382, 383.)

   Constitution cited and construed:   Art. 6, sec. 7.

   Case cited and approved:   Shelby County v. Judges, 3 Shannon's Cases, 508.

2. **SAME.** Same.   Cannot be delegated by legislature to county courts.

   The power to ascertain and fix the compensation of judges and chancellors vested in the legislature, the only lawmaking power in this State, can not be delegated to the county courts, or any other body. (*Post, pp.* 381, 382.)

   Acts cited and construed:   1901, ch. 140; 1869-70, ch. 28, sec. 11.

   Constitution cited and construed:   Art. 6, sec. 7.

   Case cited and approved:   Shelby County v. Judges, 3 Shannon's Cases, 508.

**8. SAME. Same. Same. Statute making appropriation as addition to judges' salary unconstitutional.**

A statute authorizing the county court to appropriate for the judges and chancellors, holding the several courts of such county, additional compensation to that of their regular salaries, as fixed by the general law of the State, is unconstitutional. This result can not be evaded by assuming that the statute was in the nature of a conditional law to take effect upon the happening of the contingency, that is, upon the appropriation being made by the county court, and then stand as if the statute had definitely fixed the salaries at the amount fixed in the general law and the appropriation made by the county court. (*Post, pp.* 381-382.)

Constitution cited and approved: Art. 6, sec. 7.

Case cited and approved: Shelby County v. Judges, 3 Shannon's Cases, 508.

**4. SAME. Power of taxation. Legislature may delegate, to counties for county purposes only.**

The power of taxation, under the constitution is vested in the legislature, and it can delegate this power to counties only to the extent of imposing taxes for county purposes. (*Post, pp.* 379-380, 384-386.)

Constitution cited and construed: Art. 2, secs. 1, 28, 29; art. 7, secs. 1-3.

Case cited and approved: Shelby County v. Judges, 3 Shannon's Cases, 508.

**5. SAME. Same. Salaries of judges not county purpose.**

The judges of the chancery, circuit and criminal courts are State officers, elected and commissioned as such, holding State offices, created and existing for distinctively and essentially State purposes. The judge is not a county officer, although he presides

in a single county. He is a State officer, and his salary must be paid out of the treasury of the State. (*Post, pp.* 381, 384, 387, 389-390.)

Acts cited and construed: 1901, ch. 140; 1869-70, ch. 28, sec. 11.

Constitution cited and construed:   Art. 2. secs. 1, 28 and 29: art. 7, secs. 1 and 3.

Case cited and approved: Shelby County v. Judges, 3 Shannon's Cases, 508.

6. **SAME. Same. Same.** Courts determine what is county purpose; legislature is not exclusive judge.

It is the province of the courts to determine whether or not the purpose, for which the county may be authorized by the legislature to levy taxes, is a county purpose. and if it be not a county purpose the law to that extent must be declared void. The legislature is not the exclusive judge of what is a county purpose, but the courts are the ultimate exclusive judges thereof. (*Post, p.* 383.)

Constitution cited and construed:   Art. 2 secs. 28 and 29.

Case cited and approved:   Shelby County y. Judges, 3 Shannon's Cases, 508.

7. **SAME.** County courts. Jurisdiction and powers of solely statutory.

The county courts of this State were created by the general assembly under the authority vested in it by the constitution to ordain and establish such inferior courts as from time to time may be necessary, and possess no jurisdiction or powers but those conferred by constitutional enactments. (*Post, pp.* 387-388.)

Case cited and approved:   Railroad v. Wilson County, 89 Tenn., 600.

8. **SAME. Same. Power to levy taxes or appropriate money for other than county purposes cannot be conferred by the legislature.**

The county courts of this State have no inherent power to levy taxes or appropriate the county revenues; their powers of taxation and to make appropriations are confined to such purposes as may be lawfully conferred upon them by the legislature; and that body has no power under the constitution, to authorize county courts to make appropriations for any purpose other than a county purpose. A statute authorizing a county to exercise the taxing power for any purpose other than a county purpose is unauthorized, unconstitutional and void. (*Post, pp.* 381, 387-388.)

Acts cited and construed: 1901, ch. 140; 1869-70, ch. 28, sec. 11.

Constitution cited and construed: Art. 2, secs. 1, 28 and 29.

Case cited and approved: Railroad v. Wilson County, 89 Tenn., 600.

9. **SAME. Second circuit court of Shelby county is a State court, and not a county court.**

The second circuit of Shelby county, created and established by Acts 1893, ch. 99 (Code, secs. 189 to 194 inclusive), and vested with exclusive jurisdiction over all appeals, and *certiorari* and *supersedeas* from judgments of justices of the peace of the county, and concurrent jurisdiction with other courts in divorce cases, and attached to and made a part of the fifteenth judicial circuit of the State is a State court and not a county court, and that clause of the said statute requiring the salary of the judge holding the court to be paid out of the county treasury is unconstitutional and void. (*Post, pp.* 375-376, 390-391.)

Constitution cited and construed: Art. 2, sec. 29.

Acts cited and construed: 1893, ch. 99; Code, secs. 189-194 (S.)

10. **SAME. The probate court of Shelby county is a county court, and the judge's salary is payable out of the county treasury.**

The probate court of Shelby county, created and established by

Acts 1870, ch. 86 (Code, secs. 387 to 391 inclusive), and clothed with all the judicial powers and jurisdiction of the county court, is unquestionably a county court, created for well recognized and established county purposes, and the provision in the statute creating the court that the judge thereof shall be paid out of the county treasury is valid. (*Post, pp.* 374-375, 390-391.)

Acts cited and construed: 1870, ch. 86; Code, secs. 387-391 (S).

## FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— L. LEHMAN, Special Chancellor.

W. B. GLISSON and T. D. ELDRIDGE, for Colbert et al.

JOSEPH B. HEISKELL, GEORGE B. PETERS, CARROLL, MC-KELLAR & BULLINGTON and W. W. McDOWELL, for Bond.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

The courts for Shelby county, as now constituted, consist of one chancery court, two circuit courts, a criminal court, and a probate court; the county being in itself a chancery division, a judicial circuit, and a criminal circuit. The probate court was created by an

act of the general assembly passed June 24, 1870 (Acts 1870, p. 135, c. 86), and is vested with jurisdiction over all probate matters, administration of estates of decedents, infants, idiots, and lunatics, proceedings for the allotment of dower, and all other jurisdiction with which the quarterly and quorum courts of Shelby county were theretofore vested. In short, all the judicial powers of the county court of the county were transferred to and vested in this court. The judges of this court are also vested with all the powers conferred by law upon the judges of the inferior courts of the State, and appeals from it are allowed directly to the supreme court of the State. The judge is allowed the same salary as the chancellors and the circuit judges, but to be paid out of the treasury of Shelby county, and it is made the duty of the county court of that county to make the necessary appropriation therefor.

The second circuit court of Shelby county was created by an act of the general assembly passed April 1, 1893 (Acts 1893, p. 205, c. 99), and vested with exclusive jurisdiction over all appeals and *certiorari* and *supersedeas* from judgments of justices of the peace of the county, and concurrent jurisdiction with other courts in divorce cases, and it is attached to and made a part of the fifteenth judicial circuit of the State. The salary or compensation of the judge who shall hold the court is required to be paid out of the county treasury, as then provided in reference to the judge of the probate court of the county. The clerk

of the circuit court of Shelby county and his successors in office is made ex officio clerk of this court. By an act passed at the same session of the general assembly, the judge of the probate court of Shelby county and his successors in office is made the judge of the second circuit court, and vested with all the powers conferred by law upon other circuit judges of the State.

. This has been the judicial organization of Shelby county since the enactment of these statutes, and the chancellor, circuit judge and criminal judge holding these courts have received salaries of $2,500 per annum, paid all other judges holding similar courts throughout the State, out of the State treasury. The judge of the probate court has received a salary of $2,500 as such judge, and the further sum of $1,000, compensation for services rendered in holding the second circuit court, paid out of the treasury of the county. The general assembly, for the purpose of supplementing the salary of the judges holding the courts in counties having a population of more than 153,000, April 16, 1901 (Acts Tenn., 1901, p. 247, c. 140), enacted a statute in these words: "Be it enacted by the general assembly of the State of Tennessee, that the county courts of the counties in Tennessee having a population of more than 153,000 inhabitants, by the federal census of 1900, or any subsequent federal census, are hereby authorized and empowered to appropriate such additional compensation in addition to that now received by them, as may be just and equitable to the judges of the circuit, chancery

and criminal courts, and judges of special courts of such counties; provided, that in no event shall the county courts in counties affected by this act appropriate for the purpose of paying such judges additional salaries more than one thousand dollars for any one year."

Shelby county falls within this statute, and is the only county in the State that does. The county court of this county on July 28, 1902, just before the general election had in that year, at which all the judges of the State were elected, under the authority supposed to be vested in it by the above statute, passed and made an order and an appropriation allowing each of the judges to be elected to hold said courts for the county, in addition to the salaries allowed them by law, and paid to the chancellor and judges of the circuit and criminal courts out of the treasury of the State, the sum of $1,000 annually, to be paid quarterly out of the treasury of Shelby county. The judge of the probate court was also allowed a like sum for his services in holding the second circuit court, in addition to his regular salary of $2,500 paid by the county to him as probate judge. The order made is as follows: "It is ordered by the court, in pursuance of the authority conferred by chapter 140, of the Acts of 1901, passed April 16, 1901, that during the judicial term to begin the first Monday of September, 1902, the county of Shelby pay, in quarterly payments, an additional salary of ($1,000) one thousand dollars per annum for the said term of eight years to each judge of this county, viz:, chancellor, judge, of

the criminal court, judge of the circuit court, the judge holding both the probate and second circuit court. This allowance to the latter shall be in lieu of the special allowance of $1,000 heretofore allowed, so that his salary altogether shall be $3,500, and no more."

These bills were brought August 28, 1902, by complainants, Colbert et al., claiming to be citizens, property owners and taxpayers of Shelby county, charging that the statute under which this order was made is unconstitutional and void, and the order of appropriation unauthorized and without authority of law, because in contravention of the constitution (article 6, section 7), providing that the salary of the judges of the State shall be ascertained by law, and of article 2, section 29, prohibiting the delegation to counties of the power to impose and collect taxes for other than county purposes, and praying that the defendant W. T. Bond, as chairman of the county court, and financial agent of Shelby county, be enjoined from issuing his warrant for said increase of salaries allowed said judges.

The defendant demurred to this bill, directly raising and presenting these questions, among others. The demurrers were sustained by the special chancellor elected to hear the cases, and upon decrees being entered dismissing the bills, complainants have appealed and assigned errors. The two cases were heard together.

The only questions which we will consider, as they are determinative of the case, are whether the general

assembly can delegate to the county court the power to increase the salaries of judges of the chancery, circuit, and criminal courts of the State, and whether the payment of these salaries is a State or county purpose. If this power cannot be delegated, and payment of the compensation of these judges is a State purpose, the act of 1901, page 247, chapter 140, under which the county court of Shelby county undertook to act, is unconstitutional and void, and vested in that court no power to make the appropriation attacked, because it had no jurisdiction over the subject-matter, or power to appropriate county revenues for any purpose other than such as it is lawfully authorized to do by the general assembly, and that body has no power to authorize it to make one for any other than a county purpose. The provisions of the constitution, or so much of them as bear upon the questions under consideration, are the clause in relation to the ascertainment of the salaries of judges, which is as follows: "The judges of the supreme or inferior courts shall at stated times receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected. They shall not be allowed any fees or perquisites of office, nor hold any office of trust or profit under this State or the United States." Const., art. 6, sec. 7. And that authorizing the taxing power to be delegated to the several counties of the State (Const., art. 2, sec. 29), in these words: "The general assembly shall have power to authorize

the several counties and incorporated towns in the State to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law; and all property shall be taxed accordingly to its value upon the principles established in regard to State taxation."

This authority to delegate power to counties and municipal corporations to assess, levy, and collect taxes for certain purposes is restricted to the purposes there stated, and excludes all others, and any statute authorizing these subdivisions of the State to exercise the taxing power for any other purpose is unauthorized and void.

These are not new questions in this State. They were directly presented in the case of *Shelby County* v. *The Six Judges,* determined by this court at the September term, 1875, and reported in 3 Shannon's Cases, 509. The general assembly had passed an act in 1869 (Acts 1869-70, ch. 28, sec. 11), almost identical with the one here involved, authorizing the county court of Shelby county to supplement the salaries of the judges holding the chancery, circuit, and criminal courts of that county, in sums not exceeding $2,000 per annum; and the county court had made an order allowing each one of these judges the sum of $2,000 paid annually by the county, in addition to the salaries paid them out of the State treasury, and afterwards vacated the order and refused to make further provision for that purpose, and the judges then in office instituted pro-

ceedings to compel the payment of the salaries allowed them out of the county treasury. Upon a full consideration of the case, it was held, Judges McFarland and Freeman both delivering opinions for the court, that the chancellors and the judges of the chancery, circuit, and criminal courts of Tennessee, notwithstanding their divisions and circuits might be limited to one county, were State officers, whose salaries must, under the constitution (Const., art. 6, sec. 7) be fixed by law, enacted by the general assembly, not to be increased or diminished during the term of office to which they were elected, and paid out of the State treasury; that they were not county officers, and the payment of their salaries not a county purpose, and the statute authorizing the county court to supplement such salaries was in contravention of the constitution and invalid.

In the opinion of Judge McFarland it is said: "Is the eleventh section of the act of 1869, in regard to allowing the county court to appropriate a sum not exceeding two thousand dollars to increase the salaries, in violation of the constitution? Did the legislature have the authority to delegate to the county court the power to increase the salaries of the judges, and to levy a tax to pay the appropriation? We think not. By the provisions of the constitution, judges are to receive compensation for their services, ascertained by law. Const., art. 6, sec. 7. The law ascertaining this compensation must be enacted by the legislature, the only lawmaking power. This lawmaking power cannot be delegated to

any other body. Nor do we think this result can be avoided by assuming that this part of the act of 1869 was in the nature of a conditional law, to take effect upon the happening of the contingency, that is, upon the appropriation being made by the county court, and then stand as if the act had definitely fixed the salaries at the sum of $4,500, that is, the regular salary of $2,500, and the $2,000 allowed by the county court. This proposition, we think, is wholly untenable. The act does not assume to make these salaries different from the regular salaries allowed other judges, but it simply leaves it to the county court to say whether they ought to have more, or how much more, not exceeding $2,000, and to tax the people within the county to pay it.

"If the question, as to any part of the salary, could be left to the discretion of the county court, it might all be left to that body, and the judge thus left at the mercy of the court, so far as the question of salary is concerned. If the salary is to be ascertained by law, then, in our opinion, the legislature must enact a law, and it cannot delegate the power to any other body, and this was what was attempted to be done by this provision of the act.

"We are of opinion that the county court had no power to levy a tax to pay the sums appropriated. This power of taxation is the legislative power, and this, by the constitution, is vested in the general assembly. They can delegate this power only to the extent authorized by the twenty-ninth section, article 2.

This is: The legislature 'shall have power to authorize the several counties and incorporated towns to impose taxes for county and corporation purposes . . . in such manner as shall be prescribed by law.'

"We are of opinion that the courts must determine whether or not the purpose for which the county may be directed by the legislature to levy a tax is a county purpose; and, if it be not a county purpose, the law, to that extent, must be declared void. If we hold that the legislature is the exclusive judge of whether or not the purpose be a county purpose, this restriction of the constitution might as well have been omitted, and the power given to the legislature to authorize the counties to impose the taxes without limit. It is the province of the court to decide when the legislative department has violated constitutional restrictions."

The language of Judge Freeman in the same case is equally as strong. He says: "The question which I propose to examine in this case is whether the county court is authorized to levy a tax on the people of Shelby to pay or increase the salary of the judges of these courts. If paid at all, it must be paid by taxation, and, therefore, the right to pay such tax is necessarily involved.

"By the constitution the judicial power of the State is vested in one supreme court, and such other courts as the legislature shall from time to time ordain or establish. Article 6, sec. 1.

By section 7 of said article it is provided: 'The judges of the supreme or inferior courts shall, at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected. They shall not be allowed any fees or perquisites of office, nor hold any office of trust or profit under this State or the United States.' By article 2, section 1, the powers of the State government are divided between the three departments—the legislative, the executive, and the judicial. The officer in any one of the offices created or recognized or provided for in these departments is a State officer, and his salary a charge on the treasury of the State, where a salary is provided by the constitution. That a broad distinction is made in the constitution between State and county officers is shown by article 7, section 1, entitled 'State and County Officers,' providing that 'there shall be elected in each county, one register, the sheriff and trustee for two years, and the register for four years'; also for the election of the justices of the peace, a coroner, and a ranger. Article 7, section 3, provides for the election of a treasurer or treasurers and a comptroller for the State, thus showing the distinction of these two classes of officers—one county and the other State. In fact, this idea is found all through the constitution, and has been uniformly, we believe, acted on since the organization of the State. We deem this distinction one of some importance in the solution of the question before us. By article 2, section

29: 'The general assembly shall have power to author-
ize the several counties and incorporated towns in the
State to impose taxes for county and corporation pur-
poses, respectively, in such manner as shall be pre-
scribed by law, and all property shall be taxed accord-
ing to its value upon the principles established in regard
to State taxation.'

"The question turns mainly to this clause of
the constitution. It clearly defines the powers
of the legislature to authorize taxation by counties and
incorporated towns—that is, for county and corporation
purposes—and in this evidently recognizes these prin-
ciples as distinguished from other purposes of taxation,
not county and corporation, but for the purpose of that
large corporation, the State. This was made clear by
the requirement that 'all property, when so taxed for
these purposes, shall be taxed according to its value
upon the same principles established in regard to State
taxaton'—that is, taxes to be levied by the State for
State purposes, as contradistinguished from county and
corporation or local purposes. The State tax for the
State purposes is provided for in the previous section
(28), which provided that 'all property, real, personal,
or mixed, shall be taxed, but the legislature may except
such,' among other things, as shall be held by counties,
towns and cities, for 'public or corporation purposes';
thus keeping up the idea of the two kinds of purposes
for which property may be held and taxed—the one a

110 Tenn.—25

State, and the other a county or corporation. These taxes, being for general State purposes, are directed to be levied directly by the legislature, and the mode in which it is to be done prescribed by the constitution. In the other case the legislature is authorized to delegate a taxing power to the county and corporation, but is restrained in its authority thus to delegate, except for county and corporation purposes, as distinguished from the larger or general purposes of the State, as contradistinguished from the local purposes of the county or corporation of a town.

"This, we think, is clear and beyond question. It is maintained that counties are but local divisions of the State — parts of its political divisions—and as such their purposes are in fact State purposes. But is this what is meant by the language of the constitution? We think not. For if this be so, the legislature had all the power necessary conferred by the twenty-eighth section, and the clause giving power to authorize counties and corporations to tax for county and corporation purposes was unnecessary."

We have quoted from these opinions at unusual length on account of the identity of the case in all particulars with these, and the ability and force of discussion of the questions involved. There is much more said in both opinions covering every phase of the questions, and meeting and disposing of all arguments advanced to sustain the contention of the defendants, which we will not here repeat.

We are now asked to overrule this case upon practically the same arguments that were made against the conclusions of the court therein when it was heard and determined. We cannot do so. The construction of the clauses of the constitution which are there and here considered, which are of vital importance, have too long been recognized and followed as sound and correct, to be now departed from. Further, we concur fully in the conclusions of the court in that case, and give them our entire approval. The opinions of the eminent judges from which we have quoted are full and clear, and able discussions of the questions and their conclusions are well supported by reason and authority. The case has never been over-ruled, or its soundness doubted or shaken, but, from the time it was decided, has been recognized and followed as the proper construction of the clauses of the constitution under consideration. We can add but little to what is there said, and are content to concur in and follow the conclusions there reached.

The several judges of the chancery, circuit, and criminal courts which may from time to time be created by the general assembly are unquestionably State officers, elected and commissioned for State purposes; and their salaries must be wholly and entirely fixed by the general assembly, and paid out of the State treasury. The payment of these salaries is not a county purpose, and no authority can be delegated to any county court of the State, authorizing it to increase them, or to make any

appropriation of county revenue for their payment.

The act of 1901, chapter 140, page 247, and all proceedings under it, are in violation of the constitution, and are clearly void. This being so, the appropriation made by the county court is void. County courts of this State have no inherent power to so dispose of the revenues of the county. They were created by the general assembly under the authority given it in the constitution to ordain and establish such inferior courts from time to time as might be necessary, and have only such jurisdiction and power as has been expressly vested in them by enactments of the legislature, and it cannot vest in them the authority here sought to be exercised. *Railway* v. *Wilson County,* 89 Tenn., 600, 15 S. W., 446.

It is well that such is the law. If the county courts could be vested with such power as was attempted in this statute the door to greater evils would be opened, and opportunities and temptations furnished for improper practices, which would tend to greatly confuse and demoralize the public service in every department of the State. To hold that the payment of a salary of a judge is a county purpose would be to hold it a municipal purpose, for the general assembly has the same power in relation to both classes of public corporations. To hold that a judge's salary is a county or municipal purpose would be to hold that the payments of salaries of all State officers in all three of the co-ordinate departments of the

government are county and municipal purposes. Every county and municipality in the State could be authorized by the general assembly to supplement the salaries of the State officers whose official duties call them within their territorial boundaries. There would no longer be any uniformity or certainty in the salaries of these officers. Such a state of affairs would have a most hurtful tendency upon the public service. The compensation of State officers, to a large extent, would be subject to the discretion, whims, and caprice of county courts and city councils within their respective jurisdictions; and the independence of the judiciary, so much to be desired, and which every effort should be used to protect and maintain, would be imperiled. It is said by Mr. Story, quoting from the Federalist, that, next to permanency in office, nothing could contribute more to the independence of the judges than a fixed appropriation for their support. In the general course of nature, a power over a man's subsistence means a power over his will. Story on Const., sec. 1629.

The statement in the opinion of Judge Freeman that nothing can be both a State and county purpose is criticized by counsel for defendants, and several matters are referred to, such as public schools and public roads, which are treated by law as purposes common to the State, county, and municipalities, as militating against the soundness of his position. It is true that there are a number of matters, including those that are mentioned, and others of minor importance, that are com-

mon purposes of both State, county, and municipal governments; but they are entirely different in their nature from the one under consideration, and present no analogy for its determination, and the fact that these purposes are common is no argument that this is so as to all purposes.

Judges of the chancery, circuit, and other courts of equal dignity created by the legislature, such as the criminal court of Shelby county, are officers elected and commissioned as constituent parts of one of the three co-ordinate departments of the State government, and in discharge of the duty and obligation of that government to furnish courts at its expense for the determination of controversies between its inhabitants, and are State officers, holding State offices created and existing for distinctive and essentially State purposes. Counties are not charged with the governmental duties of establishing and maintaining these courts, and have no power to assume them.   They are foreign to the objects and purposes of their creation and existence.

The conclusion we have reached in relation to the act of 1901, c. 140, p. 247, will apply to that clause of the statute creating the second circuit court for Shelby county, requiring the judge of the probate court for that county to be paid for his services in holding said second circuit court out of the county treasury.   We cannot yied to the able argument made in behalf of the judge of the probate court in support of his contention that this court is, in substance and effect, a

county court. The statute creating it provides that it shall be known as the "Second Circuit Court of Shelby County," and attaches to it the fifteenth judicial circuit of the State. It is given jurisdiction inherent in all circuit courts. There can be no mistake that it is a circuit court of the State, within the meaning of the constitution, although its jurisdiction may be limited, and the compensation or salary of the judge who may preside over it cannot be paid out of the county treasury. The probate court of Shelby county, as it now exists, is unquestionably a county court, created for well-recognized and established county purposes, and the provision that the judge of it shall be paid out of the treasury of the county is valid. It is immaterial that its jurisdiction has been extended to other matters than those generally intrusted to county courts in other counties of the State, and its judge is given the powers usually conferred by law upon judges of other inferior courts. It is none the less— having the jurisdiction that is vested in it—a county court. No elaborate discussion of this matter is necessary.

The decree of the chancellor must be reversed, and the payment of the allowances made the judges of Shelby county out of the treasury of that county perpetually enjoined.