SAMUEL STRONG PHARR, Appellee, v. PENSION BOARD, MEMPHIS LIGHT, GAS & WATER DIVISION, CITY OF MEMPHIS, Appellants. —305 S. W. (2d) 254.

Western Section.   October 26, 1956.

Peition for Certiorari denied by Supreme Court February 8, 1957.

Charles C. Crabtree, William A. Sands, and F. B. Gianotti, Memphis, of counsel, for appellants.

Caruthers Ewing, Memphis, for appellee.

CARNEY, J. The Pension Board of the Memphis Light, Gas & Water Division appeals from a decision of the Chancery Court adjudging the appellee, Samuel S. Pharr, to be entitled to a pension from the Memphis Light, Gas & Water Division of the City of Memphis, Tennessee. The determinative question before this court is whether or not appellee, Pharr, is entitled to credit toward his retirement for six years' service as Assistant District Attorney General of the 15th Judicial District which is comprised only of Shelby County, Tennessee.

The appellee, Mr. Pharr, was appointed Commissioner and Vice-President of the Memphis Light, Gas & Water Division about June 1, 1947, and served continuously in said capacity until April 18, 1955, when his services were terminated by the Board of Commissioners of the City of Memphis. There is now no question as to the legality of the dismissal of Mr. Pharr by the City Commissioners. This litigation hinges solely on the question of whether or not Mr. Pharr has a total of fifteen years creditable service entitling him to service retirement allowance under the provisions of paragraph C, section 9 of the Pension Resolution relating to involuntary retirement.

In addition to the term of approximately seven years and ten months of actual service of Mr. Pharr with the Light, Gas & Water Division, he has a total service of two years and six months as Attorney and Director of the Memphis and Shelby County Public Utilities Research Department making a total service of ten years and four months for which Mr. Pharr is entitled to credit toward his retirement and about which there is no controversy.

If Mr. Pharr is allowed credit toward his retirement for his six years' service as Assistant District Attorney General then he has a total of over fifteen years of creditable service and is entitled to a service retirement allowance. If he is not given credit for the six years' service as Assistant District Attorney General, then he does not have the minimum of fifteen creditable years and is entitled only to a refund of the contributions made to said retirement fund from his salary plus accrued interest.

The pension plan of the Memphis Light, Gas & Water Division was created by resolution of the Commissioners of said Division on October 8, 1948, and was approved by the Commissioners of the City of Memphis on October 12, 1948. The pension plan was to become effective as of October 1, 1948, and it was contemplated that all employees of the Division would be given credit toward their retirement for services rendered to the predecessors of the Memphis Light, Gas & Water Division and for those employees who had previously been employed by the City of Memphis or Shelby County, Tennessee. The pertinent provisions of the pension plan under which the appellee, Mr. Pharr, seeks relief are as follows:

"(j) 'Division Service' shall mean regular, full time service for compensation rendered as an employee of the Memphis Light, Gas & Water Division, Memphis Light & Water Division, Board of Water Commissioners, Memphis Artesian Water Department, Memphis Artesian Water Company, Memphis Water Company, Memphis Power & Light Company, Memphis Gas & Electric Company, Merchants Power Company, Memphis Consolidated Gas & Electric Company, Memphis Light & Power Company, Equitable Gas Light Company, Memphis Gas Light Company, New Memphis Gas Light Company, Gayoso Gas Light Company, or a former employee of the City of Memphis or Shelby County, Tennessee."

"(1) 'Prior service' shall mean the Division service of a member rendered before October 1, 1948, whether continuous or not. Any person shall be given credit for his prior service and for his military or naval service in World War I and II, provided he was a regular, full time employee of the Division at the time of his entry into the armed services of the United States, and if he resumed service as an employee within six (6) months of his discharge from such military or naval service. All prior service shall be certified to on prior service certificates to be issued to the members."

Section 9:

"(c) *Involuntary Retirement:* Should the Division service of a member be discontinued without fault or delinquency on the part of the member, and said member has a minimum of fifteen (15) years creditable service, then the member shall be entitled

to service retirement allowance as provided for in Section 10 of this Resolution. The amount of retirement allowance shall commence to accrue at the date of involuntary retirement.''

After Mr. Pharr had been dismissed by the Board of Commissioners of the City of Memphis a return to him of his contributions to the retirement plan was tendered and refused. Thereupon, Mr. Pharr made formal application for retirement under paragraph (c), section 9 quoted above. The Pension Board considered such application and rejected it. Thereupon, Mr. Pharr requested and was granted a hearing upon his application before the entire board.

On June 30, 1955, the Pension Board again denied Mr. Pharr's application for retirement and entered upon its minutes the following denying such retirement:

''Excerpt From Minutes Of Meeting Of Pension Board, Retirement & Pension System Of Memphis Light, Gas & Water Division, City Of Memphis, Held June 30, 1955.

''It is the opinion and finding of the Pension Board of the Retirement and Pension System of Memphis Light, Gas & Water Division:

''(1) That, it is the policy of the Pension Board of the Memphis Light, Gas & Water Division to correct any and all errors discovered in any application for membership in the Retirement and Pension System of Memphis Light, Gas & Water Division, or any document related to or copied therefrom, at the time a member of the Retirement and Pension System makes application for a pension. This policy is

necessary to correct any errors, misstatements, mistakes, discrepancies or pertinent facts which may have been discovered between the time when the applicant prepares his enrollment blank and the time of his request for pension. This policy applies to all members of the Retirement and Pension System of Memphis Light, Gas & Water Division and included Mr. Samuel S. Pharr.

"(2) That, the proof shows that there are errors in the prior service claim on the enrollment blank prepared and submitted to the Retirement and Pension System of Memphis Light, Gas & Water Division by Mr. Pharr. These errors consist of inaccuracies as to time, and the enrollment blank fails to disclose that Mr. Pharr was an employee of the State of Tennessee, although the County of Shelby augmented the pay received by Mr. Pharr as a State official.

"(3) That, the Administration of the Retirement and Pension System of Memphis Light, Gas & Water Division, as fixed by Ordinance passed by the City Commission of Memphis and by resolution formally passed by the Board of Light, Gas & Water Commissioners and approved by the City, determines the policies and decisions of the Pension Board of Memphis Light, Gas & Water Division. Although the Ordinance and Resolution creating the Retirement and Pension System of Memphis Light, Gas & Water Division recognizes full-time service by the City of Memphis and full-time service by Shelby County as service or prior service creditable to an employee of Memphis Light, Gas and Water Division who is a

member of the Retirement and Pension System, the rules and policies fixed by the Retirement and Pension System of Memphis Light, Gas & Water Division are controlling and are not determined by the Administrators' interpretation of the Acts of the City of Memphis and County of Shelby Plans.

"(4) That, the Retirement and Pension System of Memphis Light, Gas & Water Division provides benefits for full-time employees of the Division with credit for full-time service or full-time employment of the City of Memphis and full-time employment of the County of Shelby; and, therefore, it follows that joint employment by the City of Memphis and County of Shelby would be considered full-time employment under the Division's Retirement and Pension System.

"(5) That, Samuel S. Pharr was not a full-time employee of the County of Shelby between the dates of April 1, 1937 and March 31, 1943 for which he has claimed prior service as shown on the enrollment blank, but, on the contrary, the said Samuel S. Pharr was a full-time employee of the State of Tennessee by appointment of the Attorney General for the 15th Judicial Circuit to the position of Assistant District Attorney, although the County of Shelby augmented his salary.

"(6) That, the exhibits prove that during the aforesaid period Mr. Pharr was taken on and taken off the payroll of the State of Tennessee, not by the County of Shelby, but by the then District Attorney General of the 15th Judicial Circuit, a constitutional State Officer. And further, the exhibits show that

Mr. Pharr was removed from the County Payroll and put back on the County Payroll by action of the Attorney General of the 15th Judicial Circuit. The District Attorney General of the 15th Judicial Circuit, a constitutional State Officer, controlled the employment and removal from employment of Mr. Pharr as shown by the proof.

"After a hearing of all of the evidence and due consideration of the proof and argument submitted by Mr. Pharr to the members of the Retirement and Pension System of Memphis Light, Gas & Water Division, it was moved by *Mr. Siler,* seconded by *Mr. Burgess,* and unanimously carried:

"That, Mr. Pharr does not have the required number of years of creditable service under the provisions of the Retirement and Pension System of Memphis Light, Gas & Water Division which would entitle him to a pension, and his application for such pension is denied."

Mr. Pharr thereupon filed application for Writ of Certiorari to the Chancery Court of Shelby County which was granted. The Chancellor sustained the contention of Mr. Pharr to the effect that he was entitled to credit toward his retirement for the six years' service as Assistant District Attorney General. The cause was remanded to the Pension Board for further proceedings consistent with the Chancellor's holding.

During the six-year period Mr. Pharr was employed as Assistant District Attorney General of Shelby County, his pay was approximately $300 per month of which amount one-half was paid by Shelby County and the other one-half was paid by the State of Tennessee. It has been

customary for a number of years for Shelby County to supplement the salaries of the District Attorney General and his assistants with funds from the county treasury. This is by authority of the Legislature and one of the more recent of these acts is to be found in chapter 376 of the Private Acts of 1951. There is no question raised by the appellants as to the legality of said Private Acts which provided for supplementing the salaries of the District Attorney General and his assistants out of county funds. Mr. Pharr was appointed by and held office at the will of the District Attorney General.

The Pension Board first contends on this appeal that Mr. Pharr was not an employee of Shelby County at all because the District Attorney General is a state officer and not a county officer and hence his assistants must necessarily be state employees. In the second place, they contend that even if Mr. Pharr should be considered a county employee that he was only a part-time county employee and that inasmuch as one-half of his compensation was paid by the State of Tennessee then Mr. Pharr was not and could not have been a full-time employee of Shelby County and therefore not entitled to credit for such service within the contemplation of the Pension Resolution relating to division service.

The Judges' Salary Cases 1903, 110 Tenn. 370, 75 S. W. 1061, and Shelby County v. Six Judges, 1875, 3 Tenn. Cas. Shannon 508, 509, are cited by the Pension Board and relied on heavily in support of their contention. Those cases expressly held that the Circuit Judges in Shelby County even though their district comprised only one county were state officers and hence that legislation was void which authorized the county to levy taxes to obtain funds with which to supplement their salaries.

However, in the case of Davidson County v. Kirkpatrick, 1924, 150 Tenn. 546, 266 S. W. 107, a bill had been filed in the Chancery Court of Davidson County to test the validity of an act which conferred discretionary power upon the County Court of Davidson County to supplement the salary of the District Attorney General out of county revenue. The Chancellor had held the act void under the authority of Judges' Salary Cases, 110 Tenn. 370, 75 S. W. 1061, and an unreported case of Mynatt v. Trotter. The Supreme Court differentiated between the duties of a Judge and of a District Attorney General.

From said opinion we quote as follows [150 Tenn. 546, 266 S. W. 109]:

"The county existed as a unit of government when the state was organized under the Constitution of 1796, and is an integral part, an arm, of the state. Hill v. Roberts, 142 Tenn. [215] 222, 217 S. W. 826. No distinct line of demarcation can be drawn between county officers and state officers, with official duty as the only test, nor between county purposes and state purposes with objective as the only test. Shelby County v. Six Judges, 3 Tenn. Cas. Shannon [508] 527.

"It is not necessary to fix the line of demarcation in order to reach a correct conclusion in the case under consideration. It is sufficient to refer to the interdependence of the two. They jointly use the jails and workhouses, and many officers chosen by the counties render service to both State and county. They collaborate in matters of schools, highways, the collection of revenue, and the public health service.

"After the office of county solicitor was abolished many of the duties of that officer were imposed upon the district attorney. He is now required, among other things, to audit and certify bills of cost taxed against the county; to render opinions to county officers touching their official duty; to see that executions are issued by the several clerks for the collection of county revenue; to move against the sheriff and justices of the peace for revenue under the small offense law; and to bring defaulting county officers to settlement.

"The particular locality is interested in the preservation of peace consequent upon the honest and efficient administration of the district attorney's office, and the county is allowed all the revenue derived from fines and forfeitures arising out of the successful prosecution of misdemeanors.

＊   ＊   ＊   ＊   ＊   ＊

" * * * The successful administration of the district attorney's office in the congested centers where the criminal elements gather is a public purpose, a purpose in which the people of the locality and the people of the entire state are interested."

In conclusion the Court reversed the action of the Chancellor and held that the appropriation by the county to supplement the District Attorney General's salary was legal so long as the levying of a tax to obtain the funds was not required.

So then we reread paragraph (j) of the pension plan relating to "division service" quoted above and ask the question: Was Mr. Pharr an employee of Shelby County during the period that he was serving as Assistant Dis-

trict Attorney General? It is admitted that he gave his full time to the duties of the office and was in no sense a part-time employee. He was a full-time employee in the District Attorney General's office but his compensation was received from two separate sources.

The language of paragraph (j) of the pension plan relating to division service simply says " * * * or a former employee of the City of Memphis or Shelby County, Tennessee." In our opinion Mr. Pharr's service as Assistant District Attorney General comes within the purview of said provision. We agree with the Chancellor that when Mr. Pharr was serving as Assistant District Attorney General he was serving as an employee of Shelby County. He was being paid by and rendering service to Shelby County. The fact that he was also an employee of the State of Tennessee and receiving compensation from the State of Tennessee did not make him any the less also an employee of Shelby County.

We think this principle was definitely announced by the Supreme Court of Tennessee in the case of Hancock v. Davidson County, 1937, 171 Tenn. 420, 104 S. W. (2d) 824, in an opinion by Chief Justice Green. In that case suit was brought to test the validity of a statute creating a General Sessions Court for Davidson County, Tennessee, divesting all judicial authority relating to civil and criminal cases out of the Justices of the Peace and vesting such jurisdiction in the General Sessions Court. The act provided that the compensation of the judges should be paid out of county funds.

It was the insistence of those attacking the validity of said courts that the cases of Shelby County v. Six Judges, 3 Tenn. Cas. Shannon, 508, 509, and the Judges' Salary

Cases, 110 Tenn. 370, 75 S. W. 1061, were controlling and that since the Justices of the Peace were state officers, county funds could not be used to pay the salary of their successors.

From said opinion we take the liberty of quoting at length as follows [171 Tenn. 420, 104 S. W. (2d) 826]:

"(1) So while decisions of this court are to the effect that a justice of the peace, in the exercise of strictly judicial functions, is a state officer, it is plain from our statutes, as well as from adopted English statutes, that; in the exercise of other functions, the justice of the peace is strictly a county officer. In the exercise of still other functions, he is primarily a county officer, and the same must be said of these newly created functionaries who succeed to the jurisdiction and authority of justices of the peace in criminal cases, suits, and actions.

"The appellant relies chiefly upon Shelby County v. Six Judges, 3 Tenn. Cas. Shannon 508, and the Judges' Salary Cases, 110 Tenn. 370, 75 S. W. 1061, 1065. These cases declared invalid certain statutes by which the quarterly county court of Shelby County was authorized to supplement the salaries provided by the state for judges and chancellors.

"The statutes were held to violate section 7 of article 6 of the Constitution providing that 'The Judges of the Supreme or Inferior Courts shall, at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected. They shall not be allowed any fees or

perquisites of office, nor hold any office of trust or profit under this State or the United States.' Obviously a justice of the peace is not within the purview of this section of the Constitution since he has always been entitled to 'fees or perquisites of office.'

"The statutes were further held to violate the implied prohibition against the levy of a tax for any but a county purpose contained in section 20 of article 2 of the Constitution providing 'The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law.'

"(2) It is the latter section of the Constitution which the act before us is said to transgress and our cases are uniform in holding that a county tax cannot be levied for a purpose not a county purpose.

"(3) It is now well settled, especially by later decisions of this court, that a particular objective may be a county purpose and a state purpose both. In other words, a common purpose. The state may levy a tax for such common purpose and the county may be authorized to levy a tax for such common purpose. Ransom v. Rutherford County, 123 Tenn. 1, 130 S. W. 1057, Ann. Cas. 1912B, 1356; Hill v. Roberts, 142 Tenn. 215, 217 S. W. 826. This, indeed, is recognized in the Judges' Salary Cases, supra, but it was there ruled that compensation of the judges involved was not a common purpose. That such judges held 'state offices created and existing for distinctive and essentially state purposes.'

"(4) In addition to his political functions, as a member of the quarterly county court, a justice of the peace functions for other county purposes. He does not function for distinctive and essentially state purposes. The court of general sessions will immediately and primarily conserve the peace of Davidson County. As a conservator, the court will prevent breaches of the peace, arrest and commit for same, not try for same. In this role the court will serve a county purpose just as the sheriff.

"Although the decision was not based on that ground, Davidson County v. Kirkpatrick, 150 Tenn. 546, 266 S. W. 107, seems to recognize fully the authority of a county to supplement the compensation provided by the state for the District Attorney-General. This on the ground that such official renders many services, primarily at least, for the benefit of the county.

"(5) We are of opinion that the establishment and maintenance of this court of general sessions will serve a purpose common to the state and to Davidson County and that Davidson County was properly authorized to tax for this purpose. This being so, the proportion in which Davidson County and the state shall contribute to the common purpose was a matter for the Legislature. It no doubt appeared to the Legislature that Davidson County would derive sufficient financial benefit from the workings of the court to make it equitable for Davidson County to bear the expense of the court. This was a matter for the discretion of the Legislature."

The duties of the District Attorney General are to be found in T. C. A. Section 8-703. The duties of his assistants would be the same just as the name implies.

In the case of Collins v. City of Knoxville, 180 Tenn. 483, 176 S. W. (2d) 808, 811, Mr. Justice Gailor announced the following rule:

"(4) Again, the statutes creating pensions are remedial in their nature and are to be liberally construed in favor of the applicants for pensions, as a matter of sound public policy.

" 'It has been uniformly held that laws creating the right to pensions must be liberally construed with the view of promoting the objects of the lawmaking body.' 48 C. J., Pensions, sec. 4, p. 787; 43 C. J. Municipal Corporations, Secs. 1408, 1409.

" 'Where the language used may be so construed as to carry out a benign policy, within the reasonable intent of Congress, it should be done.' Walton v. Cotton, 19 How. 355, 358, 19 U. S. 355, 358, 15 L. Ed. 658, 660.

"(5) The force and effect of such statutes are not to be confined to their liberal terms. Yates County National Bank v. Carpenter, 119 N. Y. 550, 23 N.E. 1108, L. R. A. 557, 16 Am. St. Rep. 855."

This principle was followed and applied by Judge Hickerson in the case of Woodroof v. City of Nashville, 29 Tenn. App. 426, 197 S. W. (2d) 4.

Wherefore, we feel constrained to hold that the Chancellor was correct in his finding that Mr. Pharr was an employee of Shelby County and entitled to credit toward

his retirement as prior service for the period of time he served as Assistant Attorney General for the 15th Judicial district. Hence, the assignments of error of the appellant, Pension Board, are respectfully overruled.

The appellee, Mr. Pharr, has assigned as error the refusal of the Chancellor to hold that a machine record card issued by the Light, Gas & Water Division giving Mr. Pharr credit for some nine years prior service which included the six years' service as Assistant District Attorney General was final and conclusive upon the Pension Board.

Upon institution of the retirement system for the Memphis Light, Gas & Water Division each of the then 1,700 employees were required to fill out an enrollment blank showing his name, age, address, title, salary and the list of prior employment by dates for which the employee claimed credit. At the time Mr. Pharr signed his enrollment blank in October, 1948, he listed the following employment dates:

"Employment Record Prior to Oct. 1, 1948

| Employed By | Periods Employed | | Length Of Service | |
|---|---|---|---|---|
| | FROM | TO | | |
| | Mo. Day Yr. | Mo. Day Yr. | Years | Months |
| Shelby County | April 1 1937 | Mar. 31 1943 | 6 | |
| Memphis & Shelby County | April 1 1943 | Mar. 31 1945 | 2 | |
| Memphis & Shelby County | Jan. 1 1947 | May 31 1947 | | 6 |
| Memphis Lt., Gas, & Water Division | June 1 1947 | Oct. 1 1948 | 1 | 4 |
| Total creditable Prior Service (Total each column separately—Do not convert days into months or months into years | | | 9 | 10 |

The service listed from April 1, 1937, to March 31, 1943, represents Mr. Pharr's tenure of office as Assistant District Attorney General referred to above. At the time of his appointment to the Memphis Light, Gas & Water Division and at the time of the execution of the enrollment blank, Mr. Pharr's service as Assistant District Attorney General was well known to all of the officials of the Memphis Light, Gas & Water Division and the members of the Pension Board. Mr. Pharr testifies that at the time the enrollment blank was filled out he discussed with Mr. Wade, who was then the secretary of the Pension Board and is now the secretary of the Pension Board, his service as Assistant District Attorney General and that Mr. Wade clearly understood that he was claiming credit for this service and that he listed on his enrollment blank such service as a Shelby County employee with the full knowledge of Mr. Wade. Mr. Wade did not deny any portion of this testimony.

A clerk in the Division checked with the office of the County Commissioners and verified the fact that Mr. Pharr had been on the payroll of the county for the period from April 1, 1937, to March 31, 1943, and noted her verification on the enrollment blank. She did not check the nature of his service but only verified the fact that he was on the county payroll.

Each year after the institution of the pension system by the Light, Gas & Water Division a machine record card was prepared and mailed to each employee by the bookkeeping department of the Pension Board which showed the name of the employee, beneficiary, the number of years of prior service credited to his account and the total amount paid into the pension fund by the em-

ployee plus interest to each October 1. Each of these machine record cards which were handed to Mr. Pharr each year bore an arrow pointing to a place on the card which showed the number of years, months and days of prior service which in Mr. Pharr's case was listed as nine years and ten months. These cards also bore the following statements under the arrow: "This is the number of years, months, days of service prior to October 1, 1948, granted to and paid for in full by the Division without . cost to you. 'Your current service' is service rendered after 10/1/48 as a member of the Pension System. This figure is not shown. To calculate your total creditable service add your 'total prior service' to your current service."

Also the card bore the following phraseology in larger type: "Keep this card for your record * * * If there is anything incorrect on this card, notify the Pension Board in writing within 30 days; otherwise, we will assume our information is correct."

Appellee, Mr. Pharr, insists that under the provisions of two paragraphs of section 4 of Ordinance No. 153 enacted by the City Commissioners of date September 18, 1951, the Pension Board became bound by its certification to the appellee on the machine record card of the number of years of prior service for which he had been given credit on the records of the Pension Board. Said two paragraphs are as follows:

"Notwithstanding any other provision herein contained, only regular full-time employees, elective or appointed officials of the City, County, Light, Gas and Water Division or Board of Education of the Memphis City Schools, who were in service in any

one of the above divisions on October 1, 1948, or who were in such service within six (6) months before that date and re-entered such service within three (3) years after such date, shall be eligible for prior service credit to the extent as shown by the records of their respective retirement systems.

"Upon request of any member, prior services shall be certified to on prior service certificates to be issued to said member by the Board of Administration of the Retirement System."

Employees of the Pension Board testified that no prior service certificates were ever actually issued to the members by the Pension Board. Also it was testified that the Pension Board customarily delayed adjudicating the number of years of prior service to which an employee was entitled until the application for pension was actually made.

We think this insistence made by Mr. Pharr has much merit and that the question is exceedingly close. Also we think there is considerable merit in the insistence of Mr. Pharr that the Pension Board being fully apprised of the nature of prior service for which he claimed credit and having issued him the machine record cards reciting that he had been given credit for the exact number of years and months claimed by him was estopped after the lapse of many years to reconsider the allowance of credit for such prior service.

The full merits of the present litigation have been reached by our decision on the assignments of error made by the Pension Board and it appears both unnecessary and improper for us to go further and give an opinion as

to whether or not the record of credit for prior service as shown on the machine record cards was binding and conclusive upon the Pension Board.

Wherefore we expressly pretermit such question and thus respectfully overrule the assignment of Mr. Pharr.

It follows that an order will be entered affirming the judgment of the Chancellor and remanding the proceedings to the Pension Board of the Memphis Light, Gas & Water Division for further proceedings relating to Mr. Pharr's application for pension consistent with the opinion of the Chancellor and of this court. The Pension Board is taxed with the costs of this appeal.

Avery, P. J. (Western Section) and Bejach, J., concur.