[No. 11569.  Department Two.  December 17, 1914.]

## *In re* SALARY OF SUPERIOR COURT JUDGES.[1]

JUDGES—SUPERIOR COURTS—NATURE OF OFFICE—STATE OR COUNTY—
CONSTRUCTION OF CONSTITUTION—SALARIES—LIABILITY OF COUNTIES.
Since by Const., art. 4, § 6, superior courts have general jurisdiction
over all the principal matters arising between citizens, and between
the state and citizens charged with the violation of state laws, the
judges thereof are to that extent state officials; but they occupy
a dual position, performing both state and county functions, and
hence are officers of the counties for whose support the county may
make appropriations from county funds, in view of the further pro-
visions of said section to the effect that such courts have been
granted all the jurisdiction that formerly pertained to county courts
and much of that pertaining to justice courts, and that in the con-
stitution they are not denominated state courts, and only their
"process," not their "jurisdiction," extends to all parts of the state,
and that they are not elected by the state at large, and that the
salaries fixed by the constitution, are to be paid one-half by the
state and one-half by the county.

SAME—SUPERIOR JUDGE—SALARY—INCREASE — POWER OF COUNTY.
Under Const., art. 4, § 13, providing that superior court judges shall
receive such salary as may be prescribed by law, one-half thereof
to be paid by the state and one-half by the county, and Id., art. 4, § 14,
fixing such salaries at $3,000, and providing that the legislature may
increase the same, the legislature had power to provide by Rem. &
Bal. Code, § 9052, that in counties of the first class, the county com-
missioners may increase the salaries to an amount not exceeding
$4,000, all of the increase to be paid by the county; in view of
Const., art. 11, § 12, authorizing the county to make expenditures
for county purposes and the fact that the judges serve county pur-
poses.

JUDGES—SALARY—INCREASE—REVIEW BY COURTS—ADMINISTRATIVE,
LEGISLATIVE, OR JUDICIAL POWERS.  Under the power conferred by the
constitution to increase the salary of superior court judges, the
question of the abuse of the power is more of an administrative or
legislative than a judicial question, the exercise of which will not
be interfered with by the courts except in cases of gross abuse;
as the increase can be justified in that it tends to an increase of
efficiency.

CONSTITUTIONAL LAW—LEGISLATIVE POWERS—DELEGATION.  Rem. &
Bal. Code, § 9052, providing that in counties of the first class the

[1]Reported in 144 Pac. 929.

salary of the judges of the superior courts may be increased by the board of county commissioners from $3,000 to an amount not exceeding $4,000 is not a wrongful delegation of the power conferred upon the legislature by Const., art. 4, § 14, to increase such salaries.

CONSTITUTIONAL LAW—CLASS LEGISLATION. Rem. & Bal. Code, § 9052, providing that in counties of the first class the salary of judges of the superior courts may be increased by the board of county commissioners from $3,000 to an amount not exceeding $4,000, is not unconstitutional as class legislation granting privileges and immunities to a class which shall not on the same terms equally belong to all; since the judges are partly county officers, and the act is justified by the constitutional classification of counties by reference to population for the purpose of grading salaries in accordance with the difference in the amount of work done in different counties.

Appeal from a judgment of the superior court for Pierce county, Mitchell, J., entered July 9, 1913, upon an agreed statement of facts, in favor of the plaintiff, in mandamus proceedings to secure salary warrants. Affirmed.

*Lorenzo Dow* and *W. W. Keyes*, for appellant.

*F. G. Remann, F. D. Oakley*, and *A. O. Burmeister*, for respondents.

*Preston & Thorgrimson* and *Sullivan & Christian*, amici curiae.

FULLERTON, J.—The legislature of the state of Washington, at the biennial session of 1907, passed an act relating to the salaries of the judges of the supreme and superior courts; increasing outright the salaries of the one, and making the following provision with relation to the other.

"Each judge of the superior court shall receive an annual salary of three thousand dollars: Provided, that in counties of the first class said salary may be increased by order of the board of county commissioners to an amount not exceeding four thousand dollars. Whenever the salary of any judge shall be increased as herein provided the amount of such increase shall be paid by the county and not otherwise." Rem. & Bal. Code, § 9052 (P. C. 127 § 33).

Prior to the general quadrennial election of superior court judges, held in the year 1912, the board of county commissioners of Pierce county, acting pursuant to this provision of the statute, entered an order increasing the salaries of the judges to be elected at the ensuing election in that county to the full extent permitted by the act. When the salaries of the judges so elected became payable, the county auditor, acting on the advice of his duly constituted legal advisers, refused to draw warrants for the amount of the increase, and this proceeding was instituted in the superior court to compel him so to do. Judgment went against the auditor in that court, and he appeals.

The controversy was presented to the trial court upon an agreed statement of facts. It can be gathered from the statement that the auditor thought there were a number of reasons for denying the issuance of the warrants, but in this court only one question is suggested, namely, the constitutionality of the act, and this question alone we shall consider.

To an understanding of the grounds upon which the claimed unconstitutionality of the act is based, a short review of the provisions of the constitution relating to the organization and powers of the superior courts is necessary. The first section of the judiciary article of the constitution (Const., art. 4, § 1) vests the judicial power of the state in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide. The fifth section provides that "There shall be in each of the organized counties of this state a superior court, for which at least one judge shall be elected by the qualified electors of the county at the general state election;" further providing for sessions of such courts, and the terms of office of the judges. Section six defines the jurisdiction of the superior courts. By that section, they are given original jurisdiction in all cases in equity, and in all cases at law which involve the title or possession of real property, or the

legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to one hundred dollars; in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided by law; in all actions of forcible entry and detainer; of all matters of probate; of divorce, and for annulment of marriage; and in all cases and proceedings in which jurisdiction shall not have been by law vested exclusively in some other court. They are given appellate jurisdiction in cases arising in justices' courts, and other inferior courts "in their respective counties as may be prescribed by law." They shall always be open, except on non-judicial days, and "their process shall extend to all parts of the state." Section thirteen prescribes that the judges shall, at stated times, during their continuance in office, receive for their services the salaries prescribed by law therefor, which shall not be increased after their election, nor during the term for which they shall have been elected, and further provides that one-half of such salaries shall be paid by the state, and the other one-half by the county or counties for which the particular judge is elected. Section fourteen fixes such salaries at $3,000 per annum, and provides that the "legislature may increase the salaries of the judges herein provided."

The appellant also cites as bearing upon the question, sections one and two of article seven providing for equality in taxation, and section twelve of article eleven, which provides that the legislature shall have no power to impose taxes upon counties for county purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.

It is impracticable, for want of space, to state in detail the argument of the appellant's learned counsel, and we realize that any epitome of it is made at a loss of its cogency and force. The first contention, however, is that the superior courts are state courts, the judges thereof state

officers, and hence a statute which purports to authorize the
counties to make appropriations for the salary of the judges
is a statute authorizing appropriations for state rather than
for county purposes, and is prohibited by section twelve of
article eleven of the constitution, before cited.  But we think
the claim that the superior courts are state courts, and the
judges thereof state officers, does not correctly define the
position these courts and officers bear to the several counties
and to the state.  Unquestionably, since these courts have
and exercise superior and general jurisdiction over all the
principal matters in controversy arising between citizens of
the state, and between the state and individuals charged with
violating state laws, they perform state functions and are
to that extent state courts and their judges state officers,
but it is equally clear that they perform county functions as
well.   From an examination of the recitals we have made
from the section of the constitution defining the jurisdiction
of the superior courts, it will be observed that they have been
granted all of the jurisdiction that pertained to the county
courts existing at the time of the adoption of the constitu-
tion, and much of the jurisdiction then pertaining to the
courts of the justices of the peace.   Nowhere in the constitu-
tion are they denominated state courts, and it is worthy of
note that the framers of that instrument were careful to say
that the "process" of such courts, not their "jurisdiction,"
"shall extend to all parts of the state."   Again the judges of
the superior courts are not elected by the state at large as
state officers generally are elected, but by the counties in
which the courts are holden over which they preside; and the
judges so elected are permitted to sit in other superior
courts only at the request of the regularly elected judge
thereof, or at the request of the governor.   The sources from
which the judges' salaries are paid, and the source from which
the equipment necessary to an exercise of their functions is
furnished, we think lends color to the claim that framers of
the constitution did not regard the judges of the superior

courts to be strictly state officers. Their salaries as fixed by the constitution, or as it may be fixed by the legislature, are to be paid one-half by the county for which they are elected and one-half by the state, and their equipment such as the places of holding courts, the clerks, bailiffs, and other assistants are furnished wholly by the counties. On the other hand, state officers, who are clearly such by the terms of the constitution, are paid wholly by the state, and their equipment necessary to the exercise of the functions furnished wholly by it. It seems to us clear therefore that the superior courts and the judges thereof occupy a somewhat dual position; that they perform both state and county functions, and serve both state and county purposes, and, hence, are officers for whose support the counties may make appropriations from county funds.

A second contention under this branch of the argument is that the legislature is without power to provide for an increase of the salaries of the judges without making such increase payable in the manner provided by the constitution, that is, one-half by the county and one-half by the state. If the legislature had in itself increased the salaries of the judges, we think it would follow that it could not constitutionally provide that the increase should be paid wholly by the counties alone, either individually or collectively. But there is a wide difference between such an act and the act here in question. The legislature's power to increase the salaries of the judges exists in virtue of the express provision of the constitution empowering it so to do, and an increase on its part would be but the naming of another amount which the judges were to receive, leaving the existing constitutional provisions as to manner and times of payment operative. Here the legislature has sought to empower certain counties to increase the salaries of the judges elected therein, leaving it to the will of the county whether it will do so or not. Whether it has authority to do this depends on other provisions of the constitution, the provisions relating to the pur-

poses for which it may empower counties to make expenditures of county funds. That the legislature may empower counties to make expenditures for county purposes is evidenced by section twelve of article eleven, of the constitution before cited, and that the superior courts and the judges thereof serve county purposes, and are proper subjects for which county funds may be expended, we have attempted to show.

But it is said that the question of the amount of the salaries of the judges is so remotely connected with any real purpose of the county, that it is an abuse of the power conferred by this provision of the constitution to authorize the county to make, or the county to pay from its funds, an increase of salary of judges over that fixed by the general laws. This, however, is an administrative or legislative, rather than a judicial question. It may be that the courts would interfere in a case where it was made to appear that there had been a gross abuse of the power, such, for example, as in a case where the court can clearly see that there can be no possible benefit derived by the county from the expenditure; but we cannot think this is such a case. The salaries of the judges must be, in a measure, commensurate with the earning power of the average lawyer engaged in the profession, else men of capacity will not accept the office of judge. An increase of the salaries, therefore, tends to an increase of efficiency in the administration of the laws, and the act can be justified on these grounds.

A third contention is that the act is void as a delegation of legislative power to the board of county commissioners. This contention is founded on the fact that the act does not in itself fix a definite amount of increase and leave it to the board to say whether the act will or will not be put in force, but fixes a definite limit beyond which the board cannot go, and leaves it to the board to determine the amount of the increase it will authorize within the defined limit. But, if we concede, as we must, that the legislature has power to au-

thorize the board, at its option, to increase salaries at all, it is difficult to see why it may not authorize such board to fix the amount of such salaries between a minimum and a maximum amount. The one power is not more legislative than is the other. Each calls for the exercise of a discretion, and each has for its purpose the accomplishment of the same general result. Moreover, it would seem to be incontrovertible that, if the legislature has power to say that a salary may be fixed by the board of county commissioners at a definite sum, it has power to say that it may be fixed at one or the other of two or more definite sums. It does no more than this when it fixes a maximum of increase, and permits the board to choose any sum below the maximum. We cannot conclude, therefore, that the act is void because of a wrongful delegation of legislative power.

Finally, it is said that the act is void as being class legislation. The act, it will be observed, limits the right to increase salaries of judges to counties of the first class. The legislature had reference here of course to the classification of counties theretofore made by it pursuant to that clause of the constitution (art. 11, § 4), making it the duty of the legislature to regulate the compensation of county officers in proportion to their duties, and empowering it, for that purpose, to classify the counties by population. The chief argument advanced in support of the contention is founded on the claim that the superior court judges are state officers, of equal degree and authority, having substantially the same duties to perform, and hence, there is no room for classification in fixing their salaries, and any attempt so to do is arbitrary in the sense that there is no reasonable basis for a distinction, and thus in violation of that clause of the constitution which prohibits the legislature from granting privileges and immunities to a class of citizens which shall not upon the same terms equally belong to all. Could we agree that the judges were wholly state officers, undoubtedly the argument would have force, and it may be that the conclu-

sion drawn would conclusively follow.  But concluding, as we do, that the judges serve both state and county purposes, the reason which justifies the legislature in providing that the county clerk, the county auditor, the prosecuting attorney, and other county officers shall receive a higher salary in one county than in another, justifies the legislature in authorizing the superior court judges to receive a higher salary in one county than in another—the duties and responsibilities of the officer in the one county are greater and more burdensome than in the other, and the higher salary conduces to a higher degree of efficiency.

Of the cases cited by the appellant we shall notice but two, namely, *Shelby County v. Judges*, 3 Shannon's Cases (Tenn.), 508, and, from the same court, *Judges' Salary Cases*, 110 Tenn. 370 (*Colbert v. Bond*, 75 S. W. 1061).  In the first of these cases, it appears that the legislature of Tennessee passed an act reorganizing the courts of Shelby county, creating a criminal court, and creating two circuit and two chancery courts where but one circuit and one chancery court existed before.  A section of the act provided, "that the salaries of the judges and chancellors of the several courts established by this act shall be the same as for the circuit judges and chancellors as established by law, each to be paid as other judges and chancellors are paid; provided, that the county court of Shelby county may appropriate a sum sufficient to increase the salaries of said judges and chancellors not exceeding two thousand dollars each, additional thereto."  Acting pursuant to the proviso, the county court of Shelby county made an order granting an allowance to each of the judges and chancellors of two thousand dollars.  Subsequently it repealed the allowance, again reinstated it, afterwards reduced it in amount, and finally disallowed it altogether.  The judges affected by the disallowance instituted a proceeding to have the same reinstated, contending that the county court had no power to rescind the original order making the allowance.  In determining

the question, the supreme court discussed it from a constitutional standpoint, and reached the conclusion that the legislature was without power to confer on the county court authority to thus increase the salaries of such judges. The grounds of the decision are clearly stated in the following excerpt taken from the opinion of Judge McFarland:

"We are of opinion that the county court had no power to levy a tax to pay the sums appropriated. The power of taxation is the legislative power, and this by the constitution, is vested in the general assembly. They can delegate this power only to the extent authorized by the twenty-ninth section of art. 2. This is, the legislature shall have power to authorize the several counties and incorporated towns to impose taxes for county and corporation purposes in such manner as shall be prescribed by law.

"We are of opinion that the courts must determine whether or not the purpose for which the county may be directed by the legislature to levy a tax is a county purpose, and if it be not a county purpose, the law to that extent must be declared void. If we hold that the legislature are the exclusive judges of whether or not the purpose be a county purpose, this restriction of the constitution might as well have been omitted, and the power given to the legislature to authorize the counties to impose the taxes without limit. It is the province of the court to decide when the legislative department has violated constitutional restrictions.

"We will not undertake to define a county purpose, further than to say we think this is not. Judges are officers of the state whose salaries are fixed by law, and paid out of the state treasury. We do not think the judges of Shelby county are any exception."

Also the following from the opinion of Judge Freeman:

"We admit it may be more or less difficult to define what is a corporation or county purpose, so as to include all the objects for which a tax may be authorized. But this does not interfere with the other idea that it is not difficult to say what is a state purpose, and the proper object for the levy of the tax by the state by a general law for such purposes. We would say that as to salary of officers, all officers to whom it is provided in the constitution a salary shall be paid, and

be ascertained by law, are certainly state officers, and their salaries to be met and paid by a fund derived from the general taxes laid upon the property of the people of the state. That it is legitimate and proper thus to pay their salaries must be conceded by all, and has been the uniform practice of the state from its organization to the present time. If this be so, it is because it is a state purpose, involving the charge on the state treasury, and we think it follows of necessity, that being a state purpose it cannot be a county or corporation purpose at the same time, unless the two things so definitely distinguished in the constitution are interchangeable, or are but one and the same. . . .

"In view of these principles, we think it clear that a judge of court established under the constitution of the state as a repository or part of its judicial power, required by the constitution to have a fixed salary to be ascertained by law, can never be held to be a county officer in any constitutional sense, nor his salary a charge upon the county treasury, as a county purpose, for which the particular locality can be taxed by its county court. These judges are state judges, and as such their salary must be paid by the state, and not by the county, whose judges they are not."

The second case is similar in its facts to the earlier one, and a like conclusion was reached therein. In its opinion the court quoted largely from the opinions in the earlier case, and summed up its conclusions in the following language:

"The several judges of the chancery, circuit, and criminal courts which may from time to time be created by the general assembly are unquestionably state officers, elected and commissioned for state purposes; and their salaries must be wholly and entirely fixed by the general assembly, and paid out of the state treasury. The payment of these salaries is not a county purpose, and no authority can be delegated to any county court of the state, authorizing it to increase them, or to make any appropriation of county revenue for their payment."

The court's conclusions in these cases, it will be seen, were rested on the grounds that the several judges of the chancery, circuit and criminal courts, were state officers, elected and commissioned for state purposes; that the payment of

such salaries was not a county purpose; and that the legislature was without power to delegate to the county authority to appropriate money to increase their salaries for these reasons. Holding, as we do, that our superior courts are not wholly state courts, existing alone for state purposes, and the judges thereof not wholly state officers, it is plain that these cases are not authority for the conclusion that the legislature is without power to authorize the counties to make appropriations for an increase in the salaries of such judges.

These considerations require an affirmance of the judgment appealed from, and it will be so ordered.

CROW, C. J., PARKER, MORRIS, and MOUNT, JJ., concur.