Honorable Nita Rinehart State Senator PO Box 40482 Olympia, WA 98504-0482
Honorable Jean Silver State Representative PO Box 40600 Olympia, WA 98504-0600
Honorable Jay Weber Douglas County Commissioner PO Box 747 Waterville, WA 98858
Dear Senator Rinehart, Representative Silver and Commissioner Weber:
By letter, previously acknowledged, you have asked the opinion of this office on the following question:
 May the legislature, through section 114(9), chapter 18, Laws of 1995 2nd sp. sess., prohibit the administrator for the Courts from expending state funds in excess of fifty percent of the cost of specified fringe benefits provided to Superior Court judges? If so, are the thirty-nine county governments, as co-employers of the judges, required to fund the cost of the remaining fifty percent of the benefits?
We conclude that the specified fringe benefits are either "salary" within the meaning of article 4, section 13 of the constitution of Washington, or are payment obligations for which, by statute, the public employer is responsible. As such, the state is required to pay one-half of the cost of these fringe benefits, and county governments, as joint employers of the superior court judges, are required to pay the remaining one-half. Under this analysis, we need not decide whether section 114(9), chapter 18, Laws of 1995, 2nd Sp. Sess. has the effect of requiring the counties to fund fifty percent of the benefits.
 ANALYSIS I. INTRODUCTION
The questions asked concern who has the responsibility — the state alone or the state and counties together — for paying the cost of superior court judges' so-called "fringe" benefits, i.e., health care, social security (including medicare and medicaid) and workers' compensation benefits.
We are faced with the task of analyzing the responsibilities of the state and the counties to pay employer contributions for these "benefits" under article 4, section 13 of the Washington constitution, which was not written with such benefits in mind, and under statutes which impose these responsibilities on employers without specifying who is to be deemed the employer for superior court judges.
 A. FRINGE BENEFITS AT ISSUE IN THIS OPINION. 1. HEALTH CARE BENEFITS.
The legislature has determined that superior court judges should receive health care benefits. Judges are considered "employees" for purposes of chapter 41.05 RCW. RCW 41.05.011. The state and local governments covered by chapter 41.05 RCW are required to contribute to insurance and health care plans for their employees, and to do so in an amount set by the state. RCW 41.05.050(1) and (2).
 2. SOCIAL SECURITY.
Since 1951, the state has participated in the federal social security system. See chapters 41.47 and 41.48 RCW. The state pays the employer contribution for all covered employees, and employees are required to make their own contributions as well. RCW41.48.030(1)(b); 41.48.040(1). "Employee" for purposes of chapter 41.48 RCW "includes all officers and employees of the state or its political subdivision except officials compensated on a fee basis." RCW 41.48.020(3). Employees of a political subdivision are covered if the political subdivision has submitted a plan for coverage to and the plan has been approved by the Governor. RCW41.48.050. Political subdivisions with approved plans are required to pay contributions into the OASI contribution account. RCW41.48.050(3). The state makes payments for all covered employees, including political subdivision employees, from this account. RCW41.48.060.
 3. WORKERS' COMPENSATION.
The state requires virtually all employers in the state, including state and local agencies, to participate in the state's workers' compensation insurance plan. One-half of the premiums are contributed by the employers, and one-half are deducted from the salary paid to the employees. RCW 51.16.140.
 B. SECTION 114(9), CHAPTER 18, LAWS OF 1995 2nd SPECIAL SESSION.
The biennial omnibus appropriations act for 1995-97 contained the following provision in reference to the appropriation for the state court administrator:
 No moneys appropriated in this section may be expended by the administrator for the courts for payments in excess of fifty percent of the employer contribution on behalf of superior court judges for insurance and health care plans and federal social security and medicare and medical aid benefits. Consistent with Article IV, section 13 of the state Constitution, it is the intent of the legislature that the cost of these employer contributions shall be shared equally between the state and the county or counties in which the judges serve. The administrator for the courts shall establish procedures for the collection and disbursement of these employer contributions.
Laws of 1995, 2nd Sp. Sess., ch. 18, a 114(9).
 II. ANALYSIS A. OVERVIEW OF ORIGINAL CONSTITUTIONAL PROVISIONS GOVERNING COMPENSATION OF OFFICERS.
The constitution of Washington, as adopted in 1889, contained several provisions addressing the salary or compensation of state and county officers, including superior court judges. These provisions make it apparent that the amount of compensation public officers should receive, whether and by whom that amount could be changed, and when any changes could take effect, were of considerable concern to the framers as they sought to structure and limit governmental powers of the new state.
The "salaries" of superior court judges were addressed specifically in article 4, sections 13 and 14 of the constitution. Section 13 provides:
 No judicial officer, except court commissioners and unsalaried justices of the peace, shall receive to his own use any fees or perquisites of office. The judges of the supreme court and judges of the superior courts shall severally at stated times, during their continuance in office, receive for their services the salaries prescribed by law therefor, which shall not be increased after their election, nor during the term for which they shall have been elected. The salaries of the judges of the supreme court shall be paid by the state. One-half of the salary of each of the superior court judges shall be paid by the state, and the other one-half by the county or counties for which he is elected. In cases where a judge is provided for more than one county, that portion of his salary which is to be paid by the counties shall be apportioned between or among them according to the assessed value of their taxable property, to be determined by the assessment next preceding the time for which such salary is to be paid.
Section 14 set the initial salaries for superior court judges as follows:
 Each of the judges of the supreme court shall receive an annual salary of four thousand dollars ($4,000); each of the superior court judges shall receive an annual salary of three thousand dollars ($3,000), which said salaries shall be payable quarterly. The legislature may increase the salaries of the judges herein provided.
 Various constitutional provisions set the compensation of other public officials as well. Article 2, section 23 set the compensation of members of the legislature at five dollars for each day's attendance during the session, and ten cents for every mile he shall travel in going to and returning from the place of meeting of the legislature, on the most usual route.
Article 3, section 14 provided that
 [t]he governor shall receive an annual salary of four thousand dollars, which may be increased by law, but shall never exceed six thousand dollars per annum.
Section 16 of article 3 provided that the lieutenant governor shall receive an annual salary of one thousand dollars, which may be increased by the legislature, but shall never exceed three thousand dollars per annum.
Similarly, section 17 set the "annual salary" of the secretary of state at "twenty-five hundred dollars, which may be increased by the legislature, but shall never exceed three thousand dollars per annum." Section 19 set the salary of the state treasurer at "two thousand dollars, which may be increased by the legislature, but shall never exceed four thousand dollars per annum." Similar provisions were adopted for the state auditor (section 20), attorney general (section 21), and superintendent of public instruction (section 22). The salary limits of the commissioner of public lands were not set in the constitution; rather, the commissioner was entitled to "such compensation as the legislature may direct." Article 3, section 23.
The reach of the constitution in providing for salaries of officers extended as well to officers of political subdivisions of the state. Article 11, section 8 required the legislature to fix the compensation by salaries of all county officers, and of constables in cities having a population of five thousand and upwards; except that public administrators, surveyors and coroners may or may not be salaried officers.
In addition to the dollar amounts of salary public officers lawfully could be paid, the framers placed further limits on the legislature's ability to increase or decrease officers' compensation. As quoted above, article 4, section 13 provided that the salaries of supreme court and superior court judges "shall not be increased after their election, nor during the term for which they shall have been elected." Article 2, section 25 provided that "the compensation of any public officer [shall not] be increased or diminished during his term of office." In almost identical language, Article 3, section 25 provided that "[t]he compensation for state officers shall not be increased or diminished during the term for which they shall have been elected." Article 11, section 8 provided that "[t]he salary of any county, city, town, or municipal officers shall not be increased or diminished after his election, or during his term of office".
The purpose of the provision in article 4, section 13, that one-half of the salary of each of the superior court judges shall be paid by the state and the other one-half by the county, was suggested in the draft of a proposed constitution which had been prepared by W. Lair Hill. Hill's comment on the purpose of the provision that the counties pay one-half of the salary of each superior court judge was as follows: "[T]he circumstance that the salary is to some extent a local charge tends more or less to prevent pressure on the legislature for increase of salaries." A newspaper account of the debate surrounding article 4, section 13 confirms that this was the thinking of the convention delegates. In opposition to a motion to provide for the payment of superior court judges by the state, Judge Turner argued that "if the state at large paid the salaries of judges every county would clamor for a superior [court] without regard for its necessity. He thought if counties were required to pay half the expense they would hesitate about asking for a separate court." Tacoma Daily Ledger, July 20, 1889.
 B. BENEFITS MAY BE "SALARY" AS THAT TERM IS USED IN THE ORIGINAL CONSTITUTION OF WASHINGTON.
Several Washington Supreme Court decisions have construed the terms "salary" and "compensation" as used in the original constitution of Washington.
In Cox v. Holmes, 14 Wn. 255, 44 P. 262 (1896), the court declared invalid under article 11, section 8 a state legislative act authorizing payment to a county superintendent of schools, in addition to his regular salary, of an amount equal to three dollars for every school he visited. In doing so, the court explained the framers' purpose in enacting section 8:
 We think that the system which the framers of the constitution intended to provide by a 8, supra, was that of "fixed" and established "compensation by time," (State, ex rel Murphy, v. dBarnes, 24 Fla. 29, 3 So. 433), as distinguished from the system of specific fees for specific services which had theretofore prevailed; and, although the word "salary" is sometimes used to denote compensation paid for a particular dservice, it was used in the constitution to mean "a payment dependent on the time and not on the amount of the service rendered" by the officer. [citation omitted].
14 Wn. at 256. Thus, the framers' purpose was to substitute remuneration by salary for remuneration by fees, at least for county officers. Because remuneration based on the number of school visits was a payment based on the amount of service rendered, not on the time of the service, the remuneration was a "fee," not "salary," and hence, not authorized.
Since the decision in Cox v. Holmes, the court has consistently construed the term "salary" in the constitution of Washington as the framers' effort to describe the compensation to be paid an officer out of the public treasury, based on the time, rather than the amount, of the officer's service. See, e.g., State ex rel. Stratton v. Maynard, 35 Wn. 168, 175, 76 P. 937 (1904) (describing "salary" as used in article 3 generally, and article 3, section 21 in particular as "the amount of money which the state would have to pay out of its treasury for his [the attorney general's] services"). See also State ex rel. Banker v. Clausen,142 Wn. 450, 457, 253 P. 805 (1927) (reaffirming that framers' intent in adopting various provisions relating to officers' salaries was to eliminate system of fees and to fix officers compensation "in definite amounts which should be well known, and to thus prevent any further contingent or unknown profit to any officer"); State ex rel. Funke v. Board of Commissioners, 48 Wn. 461,466, 93 P. 920 (1908) (declining to decide whether "salary" and "compensation" as used in article 11, section 8 or article 2, section 25 were synonymous, but holding that a five-dollar-per-day payment was "compensation" as it was "a fixed sum with reference to a specified time, is not variable during the time that official duties require his services, and it is paid from the public treasury as that of other officers"); Franklin Cty. v. Barnes,68 Wn. 488, 491, 123 P. 779 (1912) ("There can be no question but that it was the intent of the framers of the Constitution that the compensation of salaried officers should be a fixed salary for their time, and not by fees for specific services").
Applying these principles to the general question of whether "fringe benefits" are salary or some other form of "compensation," we conclude that payments that are measurable as direct and immediate economic gain to the judge for services would be considered salary as that term is used in article 4, section 13 of the constitution. The employer portion of such benefits, paid from the public treasury as a direct economic benefit to the superior court judge for the performance of his or her duties, would qualify as "salary" under supreme court decisions construing that term as used in the constitution. To the extent the benefits at issue in this opinion fall within the definition of "salary" that the framers intended in the original constitution, the state and the counties would each be required to pay one-half of their cost.
We are uncertain whether Washington courts would consider "benefits" that do not result in direct and immediate economic gain to the judges for services to be within the definition of "salary" as that term is used in article 4, section 13. Because of the conclusion in section C. infra, that the state and counties share joint responsibility for the costs of these benefits under existing statutes, we do not find it necessary to analyze which benefits would or would not be "salary" within the constitutional provision.
 C. EVEN ASSUMING FRINGE BENEFITS ARE NOT SALARY, THE STATE AND COUNTIES JOINTLY SHARE RESPONSIBILITY FOR THEIR COST.
Even if health care, social security and workers' compensation benefits do not fit the definition of "salary," they are at least obligations legislatively imposed on the "employer" of superior court judges, for which the state and counties as "joint employers" are responsible. The principle that superior court judges occupy a dual status as both county and state officers is long-standing. For example, in In Re Salary of Superior Court Judges, 82 Wn. 623, 627-28, 144 P. 929 (1914), the court rejected the claim that superior courts were wholly state courts. The court explained that superior courts clearly perform state functions, such as adjudicating claims between citizens of the state and between the state and its citizens. But superior courts also perform county functions, exercising "all of the jurisdiction that pertained to the county courts existing at the time of the adoption of the constitution, and much of the jurisdiction then pertaining to the courts of the justices of the peace."82 Wn. at 627. Superior court judges' salaries are not paid wholly by the state, as in the case for state officers, but are paid one-half by the state and one-half by the counties for which they are elected. Id. at 628. Thus, the court concluded that
 [i]t seems to us clear therefore that the superior courts and the judges thereof occupy a somewhat dual position; that they perform both state and county functions, and serve both state and county purposes.
The judges' dual status as state and county officers, based in part on the constitutional provisions for the shared cost method for paying superior court judges' salaries, leads to the conclusion that the state and the county are joint employers of the judges. Where, then, the legislature has imposed non-salary "payment obligations" on the employer of superior court judges, the state and counties should be treated as joint employers and must share these payment obligations unless the legislature has specified otherwise.
The statutes imposing payment obligations on the employer for health care, social security (including medicare and medicaid), and workers' compensation contributions do not impose the obligation on either the state or the county; as joint employers, they are jointly responsible for these payments. In light of the sharing of the salary obligation by one-half, we believe the presumption would be that the state and county as joint employers would share equally the employer contributions that are linked to salary.
 CONCLUSION
We conclude that the specified fringe benefits are either "salary" within the meaning of article 4, section 13, or are payment obligations which attend the county's status as a joint employer under the statutes which provide the employer shall make certain payments. It is unnecessary to analyze into which of these categories each of the specified benefits would fall. As joint employers of the superior court judges, by statute the state is required to pay one-half of the cost of these fringe benefits, and county governments are required to pay the remaining one-half.
We trust the foregoing is of assistance to you.
Very truly yours,
CHRISTINE O. GREGOIRE Attorney General
Michael D. Reynolds Special Assistant Attorney General